## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS- EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-cv-3785 |
| | ) | |
| THOMAS J. DART, individually and in his | ) | Judge Durkin |
| official capacity as Sheriff of Cook County | ) | |
| Sheriff's Office, MR. WALSH, individually | ) | JURY DEMAND |
| and in his official capacity as Division 10 | ) | |
| Superintendent of Cook County Department | ) | |
| of Corrections, COUNTY OF COOK, a | ) | |
| Body Politic and Municipal Corporation, | ) | |
| COOK COUNTY BUREAU OF HEALTH | ) | |
| SERVICES, a state-certified health agency, | ) | |
| GLEN TRAMMELL, P.A-C.., individually | ) | |
| and in official capacity as Cook County | ) | |
| Department of Corrections medical staff | ) | |
| and/or agent/employee of Cook County | ) | |
| Bureau of Health Services, SALIM J. | ) | |
| DAWALIBI, M.D., individually and in | ) | |
| official capacity as Cook County | ) | |
| Department of Corrections medical staff | ) | |
| and/or agent/employee of Cook County | ) | |
| Bureau of Health Services, VICTOR | ) | |
| PELEAZ, M.D., individually and in official | ) | |
| capacity as Cook County Department of | ) | |
| Corrections medical staff and/or | ) | |
| agent/employee of Cook County Bureau of | ) | |
| Health Services, CHRISTINA KRANC, | ) | |
| M.D., individually and in official capacity | ) | |
| as Cook County Department of Corrections | ) | |
| medical staff and/or agent/employee of | ) | |
| Cook County Bureau of Health Services, | ) | |
| NANCY CHACKUMKAL, R.N., | ) | |
| individually and in official capacity as | ) | |
| Cook County Department of Corrections | ) | |
| medical staff and/or agent/employee of | ) | |
| Cook County Bureau of Health Services, | ) | |
| KIM ANDERSON, R.N., individually and | ) | |
| in official capacity as Cook County | ) | |
| Department of Corrections medical staff | ) | |
| and/or agent/employee of Cook County | ) | |

Bureau of Health Services, PATRICIA )
HAYES, R.N., individually and in official )
capacity as Cook County Department of )
Corrections medical staff and/or )
agent/employee of Cook County Bureau of )
Health Services, JACQUELINE JACK, )
L.P.N., individually and in official capacity )
as Cook County Department of Corrections )
medical staff and/or agent/employee of )
Cook County Bureau of Health Services, )
MS. MANELLA, individually and in her )
official capacity as Division 10 Health Care )
Supervisor of CCDOC medical staff and/or )
agent/employee of CCBH, R. HUBBS, )
individually and in his/her official capacity )
as Correctional Rehabilitation Worker of )
CCDOC, and J. MUELLER, individually )
and in his/her official capacity as Supervisor )
of the Correctional Rehabilitation Workers )
of CCDOC, )
)
                              Defendants. )

## FIRST AMENDED COMPLAINT AT LAW

Now comes the Plaintiff, JAMES GARLAND, by and through his attorneys, POWER

ROGERS & SMITH, P.C., and complaining of Defendants THOMAS J. DART, individually and

in his official capacity as Sheriff of Cook County Sheriff's Office, MR. WALSH, individually and

in his official capacity as Division 10 Superintendent of Cook County Department of Corrections

("CCDOC"), COUNTY OF COOK, a Body Politic and Municipal Corporation, COOK COUNTY

BUREAU OF HEALTH ("CCBH"), a state certified health agency, Doctors GLEN TRAMMELL,

M.D., SALIM J. DAWALIBI, M.D., VICTOR PELEAZ, M.D., and CHRISTINA KRANC, M.D.,

individually and in their official capacities as CCDOC medical staff and/or agents/employees of

CCBH, Nurses NANCY CHACKUMKAL, R.N., KIM ANDERSON, R.N.,, PATRICIA HAYES,

R.N., and JACQUELINE JACK, L.P.N., individually and in their official capacities as CCDOC

2

Staff and/or agents/employees of CCBH, MS. MANELLA, individually and in her official capacity as Division 10 Health Care Supervisor of CCDOC medical staff and/or agent/employee of CCBH, R. HUBBS, individually and in his/her official capacity as Correctional Rehabilitation Worker of CCDOC, and J. MUELLER, individually and in his/her official capacityas Supervisor of the Correctional Rehabilitation Workers of CCDOC, and each of them, pleading hypothetically and in the alternative, states as follows:

## INDEX OF COUNTS

Count I – Sheriff Tom Dart – 42 U.S.C. § 1983 Claim – Conditions of Confinement
Count II – Div. 10 Superintendent Walsh – 42 U.S.C. § 1983 Claim – Conditions of Confinement
Count III – Cook County – 42 U.S.C. § 1983 Claim – Conditions of Confinement

Count IV – Glen Trammell, P.A.-C – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count V – Dr. Salim J. Dawalibi – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count VI – Dr. Victor Pelaez – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count VII – Dr. Christina Kranc – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count VIII – Nancy Chackumkal, R.N. – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count IX – Kim Anderson, R.N. – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count X – Patricia Hayes, R.N. – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XI – Jacqueline Jack, L.P.N. – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XII – Div. 10 Supervisor Manella – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XIII – Cook County Bureau of Health – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XIV – CRW Supervisor J. Mueller – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XV – CRW R. Hubbs – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XVI – Sheriff Tom Dart – 42 U.S.C. § 1983 Claim – Inadequate Medical Care
Count XVII – Cook County – 42 U.S.C. § 1983 Claim – Inadequate Medical Care

## PRELIMINARY STATEMENT

1.     This is a civil action brought under 42 U.S.C. § 1983 seeking declaratory and injunctive relief and damages on behalf of Plaintiff for claims arising out of the deprivation under color of law of Plaintiff's rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution. For more than a year and a half, Plaintiff has been subjected to numerous inhumane conditions of confinement at Cook County Jail, which separately and/or in

combination constitute cruel and unusual punishment by denying him basic human needs. Plaintiff filed grievances regarding the systemic and pervasive deplorable sanitary/hygiene conditions, but was repeatedly ignored. As a result, Plaintiff developed a serious outbreak of Scabies for which he has still not received proper treatment. Defendants were deliberately indifferent to Plaintiff's medical condition and violated his liberty interest by inflicting an atypical and significant hardship on him without due process of law.

## JURISDICTION AND VENUE

2.    This civil rights action regarding the conditions of Plaintiff's confinement and Defendants' failure to provide medical care at the Cook County Jail which both caused and exacerbated Plaintiff's medical condition arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and therefore, jurisdiction is properly invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Furthermore, this Court has proper jurisdiction over the Plaintiff's request for declaratory and pursuant injunctive relief to 28 U.S.C. §§ 2201-2202.

3.    Venue is proper in the Northern District of Illinois under 28 U.S.C. §1931(b), as all Defendants are situated in this judicial district, and further, because all the relevant events and omissions giving rise to the claim asserted herein occurred within this district.

## PARTIES

4.    Plaintiff JAMES GARLAND ("Mr. Garland" or "Plaintiff"), is a United States citizen domiciled in Chicago, who at all times relevant to this Complaint, was a detainee in the custody and care of Cook County Jail, Division 10, operated by the Cook County Department of Corrections (hereinafter "CCDOC"), in the City of Chicago, County of Cook, State of Illinois.

5.     Defendant THOMAS J. DART ("Dart") is an independently elected constitutional public official of the County of Cook, elected to the position of Sheriff of the Cook County Sheriff's Office and with his principal place of business located at 50 W. Washington, Chicago, Illinois 60602. In that capacity he responsible for security and custodial services at the Cook County Jail. By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. Further, Dart is responsible for ensuring that the policies and practices of the Cook County Jail comply with federal and state requirements for the treatment of detainees.

6.     Defendant COOK COUNTY is political and corporate subdivision of the State of Illinois. At the time of the events giving rise to this Complaint, the COUNTY owned, operated, managed, maintained, controlled and/or possessed the premises located at 2700 S. California Avenue, in the City of Chicago, County of Cook, and State of Illinois, CCDOC, commonly known as the Cook County Jail.

7.     Upon information and belief, Defendant MR. WALSH ("Walsh") was the Division 10 Superintendent of CCDOC at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's claims. Upon information and belief, Defendant WALSH was the legal custodian of all Division 10 CCDOC detainees and responsible for their safe, secure, and humane housing, including the treatment and general living conditions of all detainees. Upon information and belief, Defendant WALSH was also responsible for the development, implementation, and monitoring of overall institutional goals, policies, and procedures operating in Division 10 of Cook County Jail to ensure practices comply with federal and state requirements for the treatment of detainees. Upon information and belief, Defendant WALSH, in his

5

professional capacity, has been informed of Plaintiff's complaints and grievances with regard to the conditions of confinement, and has taken no substantive action thereupon.

8.    Upon information and belief, health care services at Cook County Jail are administered by Cermak Health Services of Cook County, a subsidiary of Defendant COOK COUNTY BUREAU OF HEALTH SERVICES, the state certified public health agency for Cook County responsible for enforcing Cook County and Illinois public health laws, rules and regulations that, *inter alia*, work to prevent the spread of communicable conditions like Scabies.

9.    Upon information and belief, Defendant GLEN TRAMMELL, P.A.-C., was at all times relevant hereto a physician's assistant duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who was involved in the care and treatment of inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

10.    Upon information and belief, Defendant SALIM J. DAWALIBI, M.D., was at all times relevant hereto a physician duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who was involved in the care and treatment of inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of

Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

11.     Upon information and belief, Defendant VICTOR PELAEZ, M.D., was at all times relevant hereto a physician duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who was involved in the care and treatment of inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

12.     Upon information and belief, Defendant CHRISTINA KRANC, M.D., was at all times relevant hereto a physician duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail, who was involved in the care and treatment of inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

13.     Upon information and belief, Defendant NANCY CHACKUMKAL, R.N., was at all times relevant hereto a registered nurse duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope

7

of her agency and/or employment at CCDOC, Cook County Jail who provided medical services and treatment to inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

14.     Upon information and belief, Defendant KIMBERLY ANDERSON, R.N., was at all times relevant hereto a registered nurse duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who provided medical services to inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

15.     Upon information and belief, Defendant PATRICIA HAYES, R.N., was at all times relevant hereto, a registered nurse duly licensed to practice medicine in the State of Illinois, a duly authorized agent and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who, at all times relevant hereto, provided medical services to inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

16.     Upon information and belief, Defendant JACQUELINE JACK, L.P.N., was a registered nurse duly licensed to practice medicine in the State of Illinois, a duly authorized agent

8

and/or employee of Defendant COOK COUNTY and/or COOK COUNTY BUREAU OF HEALTH SERVICES and acting in the course of and within the scope of her agency and/or employment at CCDOC, Cook County Jail who, at all times relevant hereto, provided medical services to inmates confined to Cook County Jail, including Plaintiff GARLAND, at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's allegations set forth herein.

17.     Upon information and belief, Defendant CONNIE MANELLA was the Division 10 Health Care Supervisor of CCDOC at the time of the filing of Mr. Garland's original complaint and at all times relevant to Mr. Garland's claims. Upon information and belief, Defendant MANELLA determined procedures within CCDOC for the medical treatment of state inmates including Plaintiff GARLAND, and was responsible for supervising all medical personnel working at Cook County Jail, establishing policies for the provision of medical services to inmates incarcerated in Cook County Jail, and dispensing medication in Division 10 CCDOC. Upon information and belief, Defendant MANELLA, in her professional capacity, has been informed of Plaintiff's complaints and grievances with regard to inadequate medical care, and has taken no substantive action thereupon.

18.     Upon information and belief, Defendant Correctional Officer Supervisor J. MUELLER, was at all times relevant hereto, employed as correctional at CCDOC, Cook County Jail. Upon information and belief, Defendant MUELLER, in his professional capacity, has been informed of Plaintiff's complaints and grievances with regard to the conditions of confinement and medical needs of Plaintiff and has taken no substantive action thereupon.

9

19.     Upon information and belief, Defendant Correctional Officer R. HUBBS was at all times relevant hereto, employed as correctional at CCDOC, Cook County Jail. Upon information and belief, Defendant MUELLER, in his professional capacity, has been informed of Plaintiff's complaints and grievances with regard to the conditions of confinement and medical needs of Plaintiff and has taken no substantive action thereupon.

20.     At all times relevant hereto, all individually named Defendants have acted under the color of state law, a statute, ordinance, regulation, custom, or usage, and in the course and scope of her employment with the Department of Corrections, Cook County Bureau of Health Services, and/or County of Cook.

### FACTS COMMON TO ALL COUNTS

21.     On or about March 12, 2014, Plaintiff JAMES GARLAND was processed into the Cook County Jail for attempted murder of a police officer. On July 1, 2016, Plaintiff GARLAND was acquitted by a bench trial and released with no charges pending.

22.     As is relevant here, from the time of booking until early September 2014, Plaintiff GARLAND received and maintained a clean bill of health and no apparent distress.

23.     As an inmate at CCDOC, Plaintiff GARLAND must rely on Defendants to provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utility for minimal civilized measure of life's necessities, including food, clothing, shelter, medical care, and safety.

24.     Upon information and belief, under Cook County's written rules and regulations, Cook County Jail is required to give persons in its custody and care the opportunity to exchange bed linens and uniforms twice a week. Further, those same rules and regulations require Cook

County Jail to afford inmates the opportunity to clean their respective housing quarters and provide cleaning products on a daily basis and all house cell cleaning once a week.

25.    Moreover, the Illinois Administrate Code states that inmates are to be provided with germicidal cleaning agents, clean linens and uniforms continuously to ensure proper hygienic conditions. Additionally, pest and vermin control should be continuous and effective to ensure tiers are contaminant and pest-free, and inmates should be allowed to mop, clean and sanitize their cells daily.

26.    All the same, beginning in early September 2014, Plaintiff GARLAND endured extended periods of time without clean linens or the opportunity to clean his cell as required by written rules and regulations.

27.    Specifically, upon information and belief, at all times relevant between September 2014 and present, Mr. Garland was deprived of clean uniforms and bed linens due to infrequent and otherwise disregarded uniform and linen changes and 'temporary schedules' that forced inmates like GARLAND to wear uniforms for up to a month without a change.

28.    Additionally, upon information and belief, Cook County Jail did not furnish inmates with supplies to clean for themselves for up to a month and forced inmates to share bars of soap and linens.

29.    Further, upon information and belief and at all times relevant hereto, CCDOC allowed other inmates like Mr. Johnson and Mr. Torres to be detained in close proximity to other inmates in Division 10 despite their respective diagnoses of Scabies.

11

30.    Scabies is a highly communicable and serious skin condition that develops after *Sarcoptes scabiei var.hominis* mites burrow into the top layer of skin to live and feed. Symptoms include itching, hives, crusted rashes, sores, and infections, which in turn may lead to sepsis.

31.    Ectoparasites like Scabies are prevalent in correctional facilities, and more prominent in crowded living conditions with poor hygienic upkeep. Scabies are found infested in items such as bedding, clothes, and the like.

32.    The critical factor in the treatment of Scabies is getting rid of the mite. Therefore, jails must undergo preventative measures to treat all persons in close contact with diagnosed inmate to avoid outbreaks. Appropriate management of suspected cases includes, but is not limited to, extermination procedures, housing changes, strict isolation, clothing and linen exchange as well as shower access daily, all of which necessitates close cooperation between clinical and custodial staff.

33.    All the same, Defendants did not take any steps to remedy a potential outbreak in any manner whatsoever and forced inmates like Plaintiff GARLAND to live in deplorably unsanitary conditions of confinement.

34.    Defendants knew at all times relevant to this action that sanitary conditions in jail confinements are important to the health and medical needs of inmates.

35.    Further, Defendants knew that Scabies poses a substantial risk of serious harm to inmates, including Plaintiff GARLAND.

36.    Defendants were repeatedly advised about the intolerable living conditions in Division 10 of Cook County Jail.

12

37.    Upon information and belief, and despite knowledge of other inmates with cases of Scabies, the communicable disease was never been neutralized or exterminated. To wit, no measures or effort to remedy were taken at all to prevent contamination and spread of Scabies.

38.    Despite the Defendants' knowledge of the widespread inadequate infectious disease controls, sanitation, and environmental conditions, serious and systemic deprivations continue today in Division 10 of the Cook County Jail due to the policies, customs, and widespread practices of Cook County Jail.

39.    Rather, and despite written rules to the contrary, it is the policy, custom, and practice of Cook County Jail to force Plaintiff GARLAND and the residents of Division 10 to wear dirty uniforms and sleep in infested bed linens.

40.    Further, the widespread practice of failing to adhere to written policies concerning the supply and provision of cleaning supplies force Plaintiff GARLAND and the residents of Division 10 to live in conditions of confinement that were unsanitary and infested with communicable diseases.

### ADDITIONAL FACTS RELATED TO PLAINTIFF'S MEDICAL CARE

41.    As a result of the widespread unsanitary conditions at Cook County Jail, beginning in September 2014, Plaintiff GARLAND developed painful rashes on his torso, chest, arms, thighs, and buttocks.

42.    Proper treatment for suspected cases of scabies includes prescription to topical creams. Though generally curative, often repeat treatments are required to get rid of the mites. If topical creams fail to abate the spread of scabies in more severe cases, an anthelmintic agent is necessary to rid the inmate of scabies.

13

43.     As an inmate, Plaintiff JAMES GARLAND must rely on the medical staff within CCDOC to care for his medical needs.

44.     Health care services at Cook County Jail are administered by Cermak Health Services of Cook County ("Cermak").

45.     Cermak is part of the Cook County Bureau of Health, also located in Chicago, Illinois.

46.     The Cook County Bureau of Health is the state certified public health agency for Cook County responsible for enforcing Cook County and Illinois public health laws, rules and regulations that, *inter alia*, work to prevent the spread of communicable conditions like Scabies.

47.     Upon information and belief, Plaintiff GARLAND was diagnosed with a skin condition and treated with a topical steroid cream on or about October 6, 2014 and November 25, 2014.

48.     Thereafter, however, Plaintiff GARLAND submitted several medical requests slips and grievance reports complaining about the ineffectiveness of the topical treatment in abating the spread of the serious skin condition.

49.     Upon information and belief, the 'Dosage and Administration' listed on the topical medication prescribed to Plaintiff GARLAND indicated the need for retreatment if symptoms still manifested after primary treatment.

50.     Plaintiff GARLAND's scabies progressively worsened and required further treatment; consequently, Plaintiff GARLAND requested to see a skin specialist.

51.     Specifically, Plaintiff GARLAND developed Scabies crusts covering much of his body. These crusts hide thousands of live mites and their eggs, making treatment difficult because

14

medications applied directly to the skin may not be able to penetrate the thickened skin, and therefore, require prescription for oral medication.

52.     Upon information and belief, Plaintiff JAMES GARLAND was never referred to, allowed to see, or consulted by, a dermatologist and went misdiagnosed for over two months, despite repeated prescription of topical medication that was known to be ineffective and repeated complaints raised by Plaintiff Garland.

53.     In fact, it wasn't until December 2014 that Plaintiff GARLAND was presumptively diagnosed with Scabies.

54.     After that visit, Plaintiff was once more prescribed a topical ointment, and recommended a new bed roll, new undergarments, uniforms, and bed linens, but did not refer Plaintiff GARLAND to a dermatologist.

55.     Plaintiff GARLAND put all individually named Defendants on notice of the living conditions of his confinement and progressively worsening Scabies.

56.     Specifically, Plaintiff GARLAND submitted and resubmitted several grievances from December 2014 through early 2016 regarding the allegations set forth herein, including without limitation, defendants' imposition of unsanitary, unconstitutional conditions of confinement and failure to provide him with proper medication.

57.     In each case, plaintiff's grievance was either rejected or was not answered during the period he was incarcerated in Cook County Jail. In the alternative, since plaintiff seeks monetary compensation, and the injury to plaintiff is complete, there is no relief which is available to plaintiff through the grievance process.

15

## PROCEDURAL HISTORY

58.     On March 28, 2016, Plaintiff GARLAND brought a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, requesting a jury trial on all issues triable before a jury.

59.     On April 5, 2016, Plaintiff's application for leave to proceed *in forma pauperis* and motion for attorney representation was granted by this Court.

60.     On July 1, 2016, Plaintiff GARLAND was acquitted by a bench trial and released with no charges pending.

## COUNT I
### (Sheriff Tom Dart: Conditions of Confinement)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

61.     Upon information and belief, Defendant DART had final policymaking authority for the various health, sanitation, and environmental policies of Division 10 of Cook County Jail. In his professional capacity he has been informed of Plaintiff's complaints and grievances, and has taken no action thereupon.

62.     Plaintiff's condition was the result of the municipality's official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined.

63.     Specifically, Defendant DART acted in deliberate indifference to the clearly established constitutional rights of persons incarcerated at the Cook County Jail when, after learning that inmates in Division 10 had diagnoses of Scabies and further, that prisoners were

subjected to living conditions that were not compliant with written rules and regulations in place at Cook County Jail,, he did not take any action.

64.     By subjecting Plaintiff to the conditions of confinement set forth herein, with full knowledge of those conditions, Defendant THOMAS J. DART acted with deliberate indifference to Plaintiff's need for basic hygiene items and human necessities.

65.     Further, Defendant THOMAS J. DART was deliberately indifferent in failing to remedy these conditions in that they were aware of the inhumane conditions, yet did not take steps to remedy them, inconsistent with contemporary standards of decency and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

66.     The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

  a. Failure to provide articles of hygiene;
  b. Failed to provide proper cleaning and sanitation supplies;
  c. Failure to stop communicable disease infestations by regular and consistent linen and uniform changes;
  d. Failure to exterminate, neutralize, or contain cases of Scabies;
  e. Or otherwise failed take other reasonable measures to abate the spread of Scabies.

67.     As a direct and proximate result of the unsanitary conditions in the jail Plaintiff GARLAND developed a painful rash on his torso, thighs, and buttocks and is entitled to monetary, equitable and injunctive relief.

17

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant THOMAS J. DART violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution through their inadequate infectious disease control, inadequate sanitation, and inadequate environmental conditions;

b. An injunction, requiring Defendant THOMAS J. DART to provide appropriate protection for all CCDOC detainees against the dangers of inhumane and unsanitary living conditions present at Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

## COUNT II
### (Div. 10 Superintendent Walsh: Conditions of Confinement)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

68.     Upon information and belief, Defendant WALSH was the legal custodian of all Division 10 CCDOC detainees and responsible for their safe, secure, and humane housing, including the treatment and general living conditions of all detainees. In his professional capacity he has been informed of Plaintiff's complaints and grievances, and has taken no action thereupon.

69.     Plaintiff's condition was the result of the municipality's official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined.

70.     Specifically, Defendant WALSH acted in deliberate indifference to the clearly established constitutional rights of persons incarcerated at the Cook County Jail when, after learning that inmates in Division 10 had diagnoses of Scabies and further, that prisoners were subjected to living conditions that were not compliant with written rules and regulations in place at Cook County Jail,, he did not take any action.

18

71.     By subjecting Plaintiff to the conditions of confinement set forth herein, with full knowledge of those conditions, Defendant WALSH acted with deliberate indifference to Plaintiff's need for basic hygiene items and human necessities.

72.     Further, Defendant WALSH was deliberately indifferent in failing to remedy these conditions in that they were aware of the inhumane conditions, yet did not take steps to remedy them, inconsistent with contemporary standards of decency and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

73.     The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

    f.  Failure to provide articles of hygiene;
    g.  Failed to provide proper cleaning and sanitation supplies;
    h.  Failure to stop communicable disease infestations by regular and consistent linen and uniform changes;
    i.  Failure to exterminate, neutralize, or contain cases of Scabies;
    j.  Or otherwise failed take other reasonable measures to abate the spread of Scabies.

74.     As a direct and proximate result of the unsanitary conditions in the jail Plaintiff GARLAND developed a painful rash on his torso, thighs, and buttocks and is entitled to monetary, equitable and injunctive relief.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

    a.  A declaration that Defendant WALSH violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution through their inadequate infectious disease control, inadequate sanitation, and inadequate environmental conditions;

19

b. An injunction, requiring Defendant WALSH to provide appropriate protection for all CCDOC detainees against the dangers of inhumane and unsanitary living conditions present at Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

## COUNT III
### (Cook County: Conditions of Confinement)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

75.    COUNTY OF COOK owned, operated, managed, maintained, controlled and/or possessed the premises located at 2700 S. California Avenue, in the City of Chicago, County of Cook, and State of Illinois, CCDOC, commonly known as the Cook County Jail.

76.    Plaintiff's condition was the result of the municipality's official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined and deliberate indifference to Plaintiff's need for basic hygiene items and human necessities, inconsistent with contemporary standards of decency and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

77.    The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

a. Failure to provide articles of hygiene;

b. Failed to provide proper cleaning and sanitation supplies;

20

c. Failure to stop communicable disease infestations by regular and consistent linen and uniform changes;

d. Failure to exterminate, neutralize, or contain cases of Scabies;

e. Or otherwise failed take other reasonable measures to abate the spread of Scabies.

f. Had a policy, custom, and/or widespread practice of not providing for a sanitary and humane condition of confinement, which was the moving force behind Plaintiff's constitutional violations

78.     As a direct and proximate result of the unsanitary conditions in the jail and the policies that perpetuated them, Plaintiff GARLAND developed a painful rash on his torso, thighs, and buttocks and is entitled to monetary, equitable and injunctive relief.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant COUNTY OF COOK violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution through their inadequate infectious disease control, inadequate sanitation, and inadequate environmental conditions;

b. An injunction, requiring Defendant COUNTY OF COOK to provide appropriate protection for all CCDOC detainees against the dangers of inhumane and unsanitary living conditions present at Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

*     *     *     *

**COUNT IV**
**(Glen Trammell, P.A.-C.: Inadequate Medical Care)**

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

79.     Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

21

80. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014 and was diagnosed in December 2014, and was caused to suffer for many months without improvement.

81. At all times relevant hereto, Defendant GLEN TRAMMELL, P.A.-C.., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

82. Upon information and belief, Defendant TRAMMELL had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant TRAMMELL was in a position to ameliorate the condition.

83. Despite examination on numerous occasions and several complaints and health request slips advising Defendant TRAMMELL of Plaintiff GARLAND's condition and need for retreatment, Defendant TRAMMELL acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

84. Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant TRAMMELL was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

85. Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant TRAMMELL subjected Plaintiff GARLAND to intolerable and

22

wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

86.    Specifically, Defendant TRAMMELL unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

87.    As a direct and proximate result of Defendant TRAMMELL's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, GLEN TRAMMELL, P.A.-C., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, GLEN TRAMMELL, P.A.-C., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT V
### (Dr. Salim J. Dawalibi, M.D: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

88.     Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

89.     As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

90.     At all times relevant hereto, Defendant SALIM J. DAWALIBI, M.D., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

91.     Upon information and belief, Defendant DAWALIBI had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant DAWALIBI was in a position to ameliorate the condition.

92.     Despite examination on numerous occasions and several complaints and health request slips advising Defendant DAWALIBI of Plaintiff GARLAND's condition and need for retreatment, Defendant DAWALIBI acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

93.     Specifically, by refusing to treat Plaintiff for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant DAWALIBI was

deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

94.     Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant DAWALIBI subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

95.     Specifically, Defendant DAWALIBI unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

96.     As a direct and proximate result of Defendant DAWALIBI's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, SALIM J. DAWALIBI, M.D., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, SALIM J. DAWALIBI, M.D., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;

25

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

## COUNT VI
### (Dr. Victor Pelaez, M.D.: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

97.     Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

98.     As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

99.     At all times relevant hereto, Defendant VICTOR PELAEZ, M.D., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

100.     Upon information and belief, Defendant PELAEZ had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant PELAEZ was in a position to ameliorate the condition.

101.     Despite examination numerous occasions and several complaints and health request slips advising Defendant PELAEZ of Plaintiff GARLAND's condition and need for retreatment, Defendant PELAEZ acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

26

102.     Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant PELAEZ was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

103.     Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant PELAEZ subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

104.     Specifically, Defendant PELAEZ unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

105.     As a direct and proximate result of Defendant PELAEZ's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, VICTOR PELAEZ, M.D., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;

b. An injunction, requiring Defendant, VICTOR PELAEZ, M.D., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

## COUNT VII
### (Dr. Christina Kranc, M.D: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

106. Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

107. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

108. At all times relevant hereto, Defendant CHRISTINA KRANC, M.D., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

109. Upon information and belief, Defendant KRANC had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant KRANC was in a position to ameliorate the condition.

28

110.    Despite examination numerous occasions and several complaints and health request slips advising Defendant KRANC of Plaintiff GARLAND's condition and need for retreatment, Defendant KRANC acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

111.    Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant KRANC was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

112.    Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant KRANC subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

113.    Specifically, Defendant KRANC unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

114.    As a direct and proximate result of Defendant KRANC's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from

an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, CHRISTINA KRANC, M.D., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, CHRISTINA KRANC, M.D., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT VIII
### (Nancy Chackumkal, R.N.: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

115. Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

116. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

117. At all times relevant hereto, Defendant NANCY CHACKUMKAL, R.N., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

118. Upon information and belief, Defendant CHACKUMKAL had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent

30

medical needs, and did not take any substantive action thereupon, even though Defendant CHACKUMKAL was in a position to ameliorate the condition.

119.    Despite examination numerous occasions and several complaints and health request slips advising Defendant CHACKUMKAL of Plaintiff GARLAND's condition and need for retreatment, Defendant CHACKUMKAL acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

120.    Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant CHACKUMKAL was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

121.    Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant CHACKUMKAL subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

122.    Specifically, Defendant CHACKUMKAL unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a.  By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b.  By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c.  By failing to refer Plaintiff to a specialist;
d.  By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;

31

e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

123.    As a direct and proximate result of Defendant CHACKUMKAL's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, NANCY CHACKUMKAL, R.N., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, NANCY CHACKUMKAL, R.N., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the Plaintiff's condition;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT IX
### (Kim Anderson, R.N.: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

124.    Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

125.    As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

126.     At all times relevant hereto, Defendant KIM ANDERSON, R.N., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

127.     Upon information and belief, Defendant ANDERSON had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant ANDERSON was in a position to ameliorate the condition.

128.     Despite examination numerous occasions and several complaints and health request slips advising Defendant ANDERSON of Plaintiff GARLAND's condition and need for retreatment, Defendant ANDERSON acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

129.     Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant ANDERSON was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

130.     Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant ANDERSON subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

33

131. Specifically, Defendant ANDERSON unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

132. As a direct and proximate result of Defendant ANDERSON's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, KIM ANDERSON, R.N., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant KIM ANDERSON, R.N., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT X
### (Patricia Hayes, R.N.: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

34

133.    Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

134.    As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

135.    At all times relevant hereto, Defendant PATRICIA HAYES, R.N., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

136.    Upon information and belief, Defendant HAYES had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant HAYES was in a position to ameliorate the condition.

137.    Despite examination numerous occasions and several complaints and health request slips advising Defendant HAYES of Plaintiff GARLAND's condition and need for retreatment, Defendant HAYES acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

138.    Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant HAYES was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

35

139. Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant HAYES subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

140. Specifically, Defendant HAYES unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

141. As a direct and proximate result of Defendant HAYES's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, PATRICIA HAYES, R.N., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, PATRICIA HAYES, R.N., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

36

## COUNT XI
### (Jacqueline Jack, L.P.N.: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

142. Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

143. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

144. At all times relevant hereto, Defendant JACQUELINE JACK, L.P.N., provided medical services, including examining, treating, and prescribing medication, to inmates confined to Cook County Jail, including Plaintiff GARLAND.

145. Upon information and belief, Defendant JACK had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant JACK was in a position to ameliorate the condition.

146. Despite examination numerous occasions and several complaints and health request slips advising Defendant JACK of Plaintiff GARLAND's condition and need for retreatment, Defendant JACK acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

147. Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant JACK was

37

deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

148.    Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant JACK subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

149.    Specifically, Defendant JACK unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a. By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

150.    As a direct and proximate result of Defendant JACK's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant, JACQUELINE JACK, L.P.N., violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant, JACQUELINE JACK, L.P.N., to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

## COUNT XII
### (Div. 10 Supervisor Manella: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

151.    Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

152.    As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

153.    At all times relevant hereto, Defendant MANELLA was responsible for determining procedures within CCDOC for the medical treatment of state inmates, including but not limited to the supervision of all medical personnel working at Cook County Jail, establishing policies for the provision of medical services to inmates incarcerated in Cook County Jail, and dispensing medication in Division 10 inmates confined to Cook County Jail, including Plaintiff GARLAND.

154.    Upon information and belief, Defendant MANELLA had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant MANELLA was in a position to ameliorate the condition.

39

155.    Despite examination numerous occasions and several complaints and health request slips advising Defendant MANELLA of Plaintiff GARLAND's condition and need for retreatment, Defendant MANELLA acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

156.    Specifically, by refusing to treat Plaintiffs for scabies with full knowledge of those conditions and substantial risk of serious harm under which Plaintiff GARLAND was placed and repeatedly denying medical care without any penological purpose, Defendant MANELLA was deliberately indifferent to the substantial and recurring risk of serious harm faced by the Plaintiff GARLAND.

157.    Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant MANELLA subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs by unreasonably delaying Plaintiff's treatment in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care

158.    Plaintiff's condition was the result of an official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined and deliberate indifference to Plaintiff's need for adequate medical care for serious medical needs, inconsistent Plaintiff's clearly established rights and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

159.    The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment and unequal treatment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment

and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

    a. Failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;

    b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;

    c. By failing to refer Plaintiff to a specialist;

    d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;

    e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

    160.    As a direct and proximate result of Defendant MANELLA's refusal to administer proper treatment and adhere to written rules and regulations, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

    WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

    a. A declaration that Defendant, CONNIE MANELLA violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;

    b. An injunction, requiring Defendant, CONNIE MANELLA to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;

    c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

    d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

    e. Any further relief the Court deems appropriate.

## COUNT XIII
### (Cook County Bureau of Health: Inadequate Medical Care)

    Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

161.   Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

162.   As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

163.   Upon information and belief, Plaintiff's health request slips and grievances with regard to inadequate medical care advising Defendants of Plaintiff's serious and urgent medical needs went unattended and ignored.

164.   At all times relevant hereto, Cook County Bureau of Health Services, was responsible for enforcing Cook County and Illinois public health laws, rules and regulations that, *inter alia*, work to prevent the spread of communicable conditions like Scabies.

165.   Plaintiff's condition was the result of an official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined and deliberate indifference to Plaintiff's need for adequate medical care for serious medical needs, inconsistent Plaintiff's clearly established rights and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

166.   The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment and unequal treatment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

   f.  Failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;

g. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;

h. By failing to refer Plaintiff to a specialist;

i. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;

j. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

167. As a direct and proximate result of Defendant's policies, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant COOK COUNTY BUREAU OF HEALTH SERVICES violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;

b. An injunction, requiring Defendant COOK COUNTY BUREAU OF HEALTH SERVICES to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;

c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;

d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and

e. Any further relief the Court deems appropriate.

### COUNT XIV
### (CRW Supervisor J. Mueller: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

168. Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

169. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

43

170.    At all times relevant hereto, Defendant MUELLER was the supervisor/ director of the correctional officers at CCDOC and was responsible for, among other things, reviewing grievances and health request slips and in turn providing adequate medical care to inmates including Plaintiff GARLAND.

171.    Upon information and belief, Defendant MUELLER had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant MUELLER was in a position to ameliorate the condition.

172.    Despite several complaints and health request slips advising Defendant MUELLER of Plaintiff GARLAND's condition and need for retreatment, Defendant MUELLER acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

173.    Specifically, by refusing and/or delaying treatment of Plaintiff's Scabies with full knowledge of those conditions and the substantial risk of serious harm under which Plaintiff GARLAND was placed, Defendant MUELLER was deliberately indifferent to the serious medical needs of Plaintiff GARLAND.

174.    Despite knowledge of Plaintiff's constitutional deprivations and over Plaintiff's pleas for treatment, Defendant MUELLER subjected Plaintiff GARLAND to intolerable and wanton infliction of pain and was deliberately indifferent to Plaintiff GARLAND's serious medical needs.

175.    Specifically, Defendant MUELLER unreasonably delayed Plaintiff's treatment and acted in conscious disregard of Plaintiff GARLAND's clearly established right to adequate medical care in one or more of the following respects:

a.  By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b.  By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c.  By failing to refer Plaintiff to a specialist;
d.  By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e.  Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

176.    As a direct and proximate result of Defendant MUELLER's deliberate indifference,

Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive

the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily

treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a.  A declaration that Defendant MUELLER violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b.  An injunction, requiring Defendant MUELLER to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c.  Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d.  Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e.  Any further relief the Court deems appropriate.

## COUNT XV
### (CRW R. Hubbs: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

177.    Scabies is an objectively serious medical condition that is potentially epidemic in

a jail setting.

178.    As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

179.    At all times relevant hereto, Defendant HUBBS was a correctional officer at CCDOC and was responsible for, among other things, reviewing grievances and health request slips and in turn providing adequate medical care to inmates, including Plaintiff GARLAND.

180.    Upon information and belief, Defendant HUBBS had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant HUBBS was in a position to ameliorate the condition.

181.    Despite several complaints and health request slips advising Defendant HUBBS of Plaintiff GARLAND's serious medical needs and request for retreatment, Defendant HUBBS acted in deliberate indifference to the clearly established constitutional rights of Plaintiff GARLAND.

182.    Specifically, subjected Plaintiff GARLAND to intolerable and wanton infliction of pain, Defendant HUBBS unreasonably delayed Plaintiff's treatment and was deliberately indifferent to Plaintiff GARLAND's serious medical needs in one or more of the following respects:

   a.  By failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
   b.  By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
   c.  By failing to refer Plaintiff to a specialist;
   d.  By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;

46

e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

183. As a direct and proximate result of Defendant HUBBS's deliberate indifference, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant HUBBS violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution by acting with deliberate indifference to Plaintiff's serious medical needs;
b. An injunction, requiring Defendant HUBBS to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT XVI
### (Sheriff Tom Dart: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

184. Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

185. As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

47

186.    At all times relevant hereto, Defendant THOMAS J. DART had final policymaking authority for the various health, sanitation, and environmental policies of Division 10 of Cook County Jail.

187.    Upon information and belief, Defendant DART had been informed of Plaintiff's complaints and grievances that he was not receiving treatment for serious or urgent medical needs, and did not take any substantive action thereupon, even though Defendant DART was in a position to ameliorate the condition.

188.    Plaintiff's condition was the result of the Defendant DART's promulgation of official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined and deliberate indifference to Plaintiff's need for adequate medical care for serious medical needs, inconsistent Plaintiff's clearly established rights and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

189.    The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment and unequal treatment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

    a. Failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
    b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
    c. By failing to refer Plaintiff to a specialist;
    d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;

e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

190.    As a direct and proximate result of Defendant's policies, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a. A declaration that Defendant THOMAS J. DART violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution through their inadequate infectious disease control, inadequate sanitation, and inadequate environmental conditions;
b. An injunction, requiring Defendant THOMAS J. DART to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c. Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e. Any further relief the Court deems appropriate.

## COUNT XVII
### (Cook County: Inadequate Medical Care)

Plaintiff reincorporates and realleges Paragraphs 1-60 in their entirety, and further alleges as follows:

191.    Scabies is an objectively serious medical condition that is potentially epidemic in a jail setting.

192.    As is relevant here, Plaintiff GARLAND contracted scabies in September 2014, was diagnosed in December 2014, and was caused to suffer for many months without improvement.

49

193.    Upon information and belief, Plaintiff's health request slips and grievances with regard to inadequate medical care advising Defendants of Plaintiff's serious and urgent medical needs went unattended and ignored.

194.    At all times relevant hereto, Defendant COUNTY OF COOK owned, operated, managed, maintained, controlled and/or possessed the premises located at 2700 S. California Avenue, in the City of Chicago, County of Cook, and State of Illinois, CCDOC, commonly known as the Cook County Jail.

195.    Plaintiff's condition was the result of the Defendant COUNTY OF COOK's official policy, custom, and/or widespread practices which had a mutually enforcing effect that produces the deprivation of human necessities while confined and deliberate indifference to Plaintiff's need for adequate medical care for serious medical needs, inconsistent Plaintiff's clearly established rights and in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

196.    The inhumane conditions and extreme deprivations that occurred over an eighteen month period, listed below, separately or in combination, constituted cruel and unusual punishment and unequal treatment, depriving Plaintiff GARLAND of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983:

a. Failing to appropriate any weight to consistent grievances and repeatedly requested medical assistance;
b. By failing to prescribe and/or administer substitute or alternative medicine after learning that the topical prescription was ineffective;
c. By failing to refer Plaintiff to a specialist;
d. By failing isolate, neutralize, or exterminate communicable infestations known to Defendant and being deliberately indifferent in the management of communicable diseases;
e. Or by otherwise failing to take even minimal steps to remedy the constitutional deprivations Plaintiff was subjected to.

50

197.    As a direct and proximate result of Defendant's policies, Plaintiff GARLAND suffered from an objectively serious medical needs so obvious as to perceive the need for medical attention and experienced prolonged, unnecessary pain as a result of a readily treatable condition.

WHEREFORE, Plaintiff, JAMES GARLAND, respectfully requests the following relief:

a.  A declaration that Defendant COUNTY OF COOK violated Plaintiff's constitutional rights Plaintiffs under the 8th and 14th Amendments to the United States Constitution through their inadequate infectious disease control, inadequate sanitation, and inadequate environmental conditions;
b.  An injunction, requiring Defendant COUNTY OF COOK to provide appropriate and adequate medical care to attend to his serious and urgent medical needs while confined in Division 10 of Cook County Jail;
c.  Compensatory damages to be determined at trial sufficient to compensate Plaintiff for the lasting effects and pain and suffering he has incurred because of the causation, exacerbation, and perpetuation of Plaintiff's Scabies;
d.  Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 28 U.S.C. § 1920; and
e.  Any further relief the Court deems appropriate.

Respectfully submitted,

_Thomas M. Power_

Thomas M. Power, Attorney for Plaintiff

Thomas M. Power
Power Rogers & Smith, P.C.
70 West Madison Street | Suite 5500
Chicago, Illinois 60602
(312) 236-9381
tompower@prslaw.com
slaw@prslaw.com